The next case on the calendar is United States v. Joyner. The next case on the calendar is United States v. Joyner. Good morning, Your Honors. May it please the Court, I'm Theodore Koch. I represent the appellant Duane Joyner. In September of 2017, Mr. Joyner was indicted for several narcotics crimes. He filed a motion to suppress some of the evidence he lost, proceeded to trial, was convicted on all charges but one, and was then sentenced. And he was sentenced on the drug charges as well as on an uncharged robbery. We have divided our issues into four for this appeal. Can I cause you to skip ahead a little to issue four just because I think it might be your strongest argument? And what I want to ask you is if we end up rejecting issues one through three but decide that the base calculation was wrong and that's clear error and it's got to go back for resentencing, are you sure you want that? Because it seems to me that, you know, the government's going to come in and say, okay, here's the fentanyl and there's even more heroin and the judge gets the chance to redo the whole thing and may decide to go higher even if the guidelines aren't higher, which they may well be. Is that what you want to have happen here? Well, just first as a matter of clarification, I believe that issue was our issue one and the government addressed that as issue four in its book. And the answer is yes, we do want it, but we don't think that the government should be able to now come in with more heroin or fentanyl or whatever it is. That would violate principles of fundamental fairness. The government could have done that the first time around. Well, except there was no objection. Why doesn't that make a difference? We've said there are circumstances where you shouldn't be able to reopen the record, but in a circumstance where there's a statement of the PSR that's unsupported but nobody seems to be aware of it, why wouldn't it be appropriate to consider additional evidence if it came to that? Well, we did object by saying that the base offense level should be 24. I know it was on different grounds and that we'd probably lose on preservation of that, although I don't think we should. But assuming that we do, the objection, whether the, you know, taking a step back, whether a criminal defendant objects or not does not alleviate the government of its burden of proof. And in this issue, it's by preponderance of the evidence because it's at sentencing, the government still has the burden to prove the substance that it is trying to punish a defendant of possessing. So that would be the plain error standard, but that ultimately goes back to whether it does impact your substantial rights if it results in the guidelines range being wrong. Now, the government seems to say, one of its arguments appears to be that we can look at this record and be certain that the district court would have imposed the same sentence even if there had been a base offense level of 24. They do say that. And what the district court said, however, referred to the robbery enhancements. It did not refer to the base offense level. Right. I think you've got that the district court did not expressly say that a change in the base level would not affect this sentence. But isn't there a level of circumstantial evidence that it would not, which we may well have here, especially because the sentence was so far below the guidelines as calculated? Well, there are many cases, Lopez is the one that we cited, which says that you can just remand it to the district court and ask him, given that the correct base offense level Do you want us to do that? Is that what you want us to do? Yes, please. Ask, given that the correct base offense level was 24, not 26, would you have still imposed the same non-guideline sentence? I think that's a proper resolution of this case. And then we'll see what Judge Meyer says. That would be our issue one, the government's issue four. If there are no more questions on that, I'll turn to a different issue. And that would be the issue of the motion to suppress. I will start off with what I understand the court and the government will be seeing, which is that Mr. Joyner did several controlled buys. He was a known drug dealer. We concede that he was selling drugs. We concede that he lived in Bridgeport and that he sold drugs in Bridgeport. However, we still believe that there has to be more of a nexus between the place to be searched and the drugs than there existed in this case. And we gave an example, which I'd like to repeat because I think it's a good and important example. Assuming that the government has a warrant to search my person, and they have some suspicion that I'm connected with some storage area somewhere, and they just have a little shred of something connecting me to that storage area, but they can get probable cause to search me. If they wait until I'm in the vicinity of that storage area, that's a way for them to then search me right there and then get into the storage area without sufficient probable cause. That's the problem, as I see it, with the search of the Holiday Inn in this case. Isn't there one piece of circumstantial evidence by the time they get the application, they put in the application, he has a hotel room in Bridgeport. He has a residence in Bridgeport, but he also is seen frequenting and is staying at a hotel, which is unusual. Well, but that's it. They didn't see him selling drugs out of the hotel room. There was no connection beyond this one uncorroborated source. Did the search of his person take place in the vicinity of the hotel? Yes. And they found a key card. There was a huge amount of dispute about where the key card was, but they found a key card. And then they actually initially entered the hotel room without a warrant to do a search because there was a gun issue. They wanted to make sure it was safe. And then they got the warrant and came back later and did the search. Yes, just on that, the Fourth Amendment question, your brief characterizes, you said here, it's relying on the uncorroborated word of an informant. And I understand what you're saying, but it doesn't seem to me that the informant is uncorroborated. The initial report is he's selling heroin, but then they corroborate that through the controlled buys. And then they do establish that he's in the vicinity of the hotel in possession of drugs and other indicia of selling, and that he's rented a hotel room in a town in which he also maintains a residence. And he's going in and out. And he's going in and out of the hotel. Together. And the other problem for your argument is that the issuing magistrate had to find a fair probability that they'd find evidence in the hotel room. We're charged with saying, did the issuing magistrate have a substantial basis for that determination? Well, I just have, you know, that is a way that the facts can be seen, but you always have to remember that we are talking about the Fourth Amendment and people's places being secure. And particularly speaking, a hotel where other people are coming and going, there can be a little more investigation than this to get that warrant. That's what we're, that's all we're asking for. Are there any more questions or shall I reserve the rest for rebuttal? Thank you. Thank you. Good morning, Your Honors. May it please the Court. Joseph Fiscarondo for the United States. Your Honors seem to, I suppose, be focused on a particular issue of the procedural, claimed procedural error concerning the calculation. It is the government's position, as obviously stated in our moving papers, that the procedural error here, which should be reviewed under a plain error standard, certainly did not affect the substantial rights of Mr. Joyner in this case, and that clearly Judge Meyer, in his holistic sentencing of Mr. Joyner, may express his intention to sentence Mr. Joyner to a maximum sentence, notwithstanding the calculation of the guidelines in this particular case. But he only referred to the enhancements. He said the sentence would be the same even if I didn't apply these enhancements. He didn't say anything about the base level. He, he, that is correct, Your Honor, although I would point, Your Honors, to a particular portion of the record. I believe it's Governance Appendix 282, where, in a separate section of his, of his discussion on the underlying sentence, he indicates that 15 years really is the right amount of time in your case. That is a, he made that sentence, he made that pronouncement separate and apart from the previous discussion that was had about the sentencing enhancements, where he talked about the, the overall guidelines calculation. And shortly after he indicated that 15 years really is the right amount of time in your case, he described the rehabilitative purpose behind his sentence, as well as his consideration of all of the sentencing factors in indicating that 15 years was appropriate. He went on also to impose a longer-than-usual in the court's order. I'm not saying that we're sending it back. It's going to require a reconstitution of a jury to decide something. It's just sending it back and have the judge get it right this time. It's, it's, it's, whatever words you use, why don't you want to have the judge just get it right this time? Your Honor, so that's certainly the prerogative of this Court, and I understand that there is some concern about the calculation of the fence ball here and the two levels.    on the underlying sentence, he indicates that 15 years really is the right amount of time in your case. I'm not saying that we're sending it back.  Your Honor, so that's certainly the concern of this Court, and I understand that the court has a clear indication that the court has properly exercised its sentencing obligations in a holistic sentence, which I think is what we have here on the record, a very careful and considered sentence, where, where Judge Meyer, notwithstanding the calculation of the guideline, made a holistic determination based on the totality of the sentence. And we disagree with you about that. I mean, we do have taken the calculation of the correct guidelines range, the correct   to have a clear indication that the court has properly exercised its sentencing obligations is pretty important. And he doesn't, as my colleague has already pointed out, he doesn't speak precisely to that. So, if, if we disagree with you, why is it that the government should get a second bite at the Apple here as to proof that the, that a new sentencing proceeding? I mean, I, at the end of your brief, you say, well, if you disagree with us, we should be permitted to put on evidence regarding the drug quantity when it goes back down. Why is that? You had one proceeding. Well, let me, let me just say that I, I believe in a remand proceeding, the government is entitled, if, if the, if the proceeding is open again for the Court's consideration, to put all of the evidence supporting the sentencing factors before the Court. In this case, Your Honor, Judge Kogan indicated. That includes, excuse me, that includes new evidence that was not before the Court. Well, I, I, I would just point the Court to a discussion at Appendix 264, Government Appendix 264, in which, at sentencing, the government laid out a quantity of heroin involved in the offense conduct of 1.1 kilograms and asked the Court to consider that in its holistic sentencing determination. So I think the government, both in the Fatico proceeding. So you're saying it wouldn't be new evidence? It certainly would not be new. There was evidentiary testimony and support in the form of the Fatico proceeding, and then the government identified it as a factor for sentencing at the sentencing. There's a distinction, isn't there, between sending the case back for a clarification as to why the sentence was imposed and sending it back for a full resentencing? We could do either one of those things, right? Yes. And which would you prefer? Well, frankly, we think that, again, consistent with Judge Meyer's view that 15 years is the correct sentence, it's simply a clarification of whether, notwithstanding the guideline calculation, he was in all seriousness when he imposed that 15-year sentence. That would simply require a clarification. I'm sorry. What I'm concerned about is if we take Rasheed too far and we say, okay, the Second Circuit is going to start inferring what the district court would have done, even though it didn't expressly say that, you're really opening a door to a lot of reexamination of sentencings where there's a guideline error. I'm not sure that I agree with Your Honor on that. Your Honor, yourself indicated that there's circumstantial evidence that is certainly in the record indicating what Judge Meyer was intending to do. Right. But in every case, the circumstances would have to or at least many cases, the circumstances would have to be measured, right? Yes. That is true. That is true. And I think that on this record, it's his intention was clear, even though he was discussing at one point sentencing enhancements that the defendant had objected to. I would suggest, Your Honor, respectfully, that one of the reasons that the guideline calculation about fentanyl was not discussed when the judge made his 15-year pronouncement, imposed sentence, is that it was not objected to. It simply wasn't an issue that the court was contemplating in that particular fashion. Had it been a point of contention, then I think Judge Meyer would have been clearer that notwithstanding any of the guideline calculations, he intended to impose a 15-year sentence. If there are no further questions, Your Honors, I would stand on the government's briefing on the matter. Thank you, Your Honor. Goodbye. Just following up on Judge Meyer's view, the holistic sentencing that we were talking about, the transcript at page 210, the sentencing, Judge Meyer said, the huge stash of drugs in that hotel room of yours, and it had heroin, but also a bit of fentanyl in it, and that's the other concern in terms of what you are doing to people's lives when you make those kinds of choices. And then skip down to the bottom. It says, I think you didn't care. You were fine with whatever it was that was going to pay its way for you. It is clear that we are in the midst of an opioid epidemic, the strength of which is being driven by fentanyl. And as much as Judge Meyer's sentence was thoughtful and was holistic, it was also wrong about that particular issue. And it can't be said that his view that everything had fentanyl in it didn't drive his sentence. My last point that I'd like to make is just about an issue that we didn't get to yet, if the Court doesn't mind. The issue of the robbery enhancements. I would just like to propose an analogy. I know that we're saying due process, and that Aleem and Apprendi and even Heyman don't quite apply in the way that the government said. I understand that. But I think that there's a line that has to be drawn somewhere. Because if you don't draw a line somewhere, then what you can end up having is state legislatures can make a law that says something like, you shall not steal. And that's it. No mandatory minimum, no maximum, nothing. And then if a prosecutor convicts you, then everything else can be proved outside of the presence of a jury. And that would violate due process. It's kind of speculative, isn't it? What criminal statute doesn't have a sentencing range attached to it? It's analogous. And what I'm saying is that if legislatures were to do that under the due process rules as we have them, that would be okay. That's the only point I wanted to make. I'll defer to the rest of Your Honor's consideration. And I thank you. Thank you both. And we will take the matter under advice. Good to see both of you. I will ask the clerk to adjourn court. That concludes our calendar day. Court stands adjourned. Thank you.